IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEANNE MARIE SCOTT, | ) | CASE NO. 4:12-CV-00859 |
| | ) | |
| Plaintiff, | ) | JUDGE GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT & RECOMMENDATION |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b).  The issue before

the undersigned is whether the final decision of the Commissioner of Social Security ("the

"Commissioner" or "Defendant") denying Plaintiff Jeanne Marie Scott's application for a Period

of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42

U.S.C. §§ 416(i) and 423 is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth herein, the undersigned recommends the decision of the

Commissioner be AFFIRMED.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On April 6, 2009, Plaintiff Jeanne Marie Scott ("Plaintiff" or "Scott") protectively

applied for a Period of Disability and Disability Insurance Benefits.  (Tr. 53).  Plaintiff alleged

she became disabled on April 1, 2006, due to suffering from degenerative disc disease,

osteoarthritis, and severe back pain.  (Tr. 122, 136).  Plaintiff's Disability Insurance Benefits

expired on December 31, 2008.  (Tr. 14).  The Social Security Administration denied Plaintiff's

application initially and upon reconsideration.  (Tr. 57, 65).  Thereafter, Plaintiff requested a

hearing before an administrative law judge to contest the denial of her application.  (Tr. 71).  The Administration granted Plaintiff's request, and a hearing was scheduled.  (Tr. 24).

On May 17, 2011, Administrative Law Judge David F. Brash (the "ALJ") convened a hearing to evaluate Plaintiff's application.  (Tr. 26).  Plaintiff appeared, with counsel, and testified at the hearing.  (*Id.*).  Lynn S. Smith, an impartial vocational expert, also testified at the hearing.  (*Id.*).  On May 26, 2011, the ALJ issued an unfavorable decision denying Plaintiff's application for benefits.  (Tr. 12-19).  Subsequently, Plaintiff sought review of the ALJ's ruling from the Appeals Council, which was denied, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1, 7).  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

Plaintiff, born on March 9, 1958, was forty-eight years old on her alleged onset date.  (Tr. 32).  She has a tenth grade education and has past work experience as a home health aide and a cashier.  (Tr. 53, 137).

## II.  PERTINENT MEDICAL HISTORY[1]

### A. Medical History Related to Plaintiff's Impairments

The ALJ considered the following impairments in his determination of Plaintiff's claim: gastro-esophageal reflux disease; depression; peripheral edema; degenerative disc disease; and anemia.  The diagnosis and treatment of each is outlined below, as presented by the medical evidence on the record.

#### 1. Gastro-esophageal Reflux Disease (GERD)

Plaintiff was diagnosed with GERD/gastritis on September 14, 2006, by her primary care physician Fareedah Goodwin, M.D.  (Tr. 205).  She was prescribed Nexium to treat this

---

[1] The following recital of Plaintiff's medical record is merely an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

condition, and it was reported she was "doing well" and appeared the condition was controlled while on her medication.  (Tr. 200-205).  No further issues are indicated in the medical evidence regarding this condition after July 25, 2008, and treatment notes in 2009 merely show continued control with Nexium.  (Tr. 200, 227-229).

### 2. Depression

Following her mother's death, Plaintiff was diagnosed by Dr. Goodwin with depression on July 8, 2008.  (Tr. 201).  Dr. Goodwin's notes reported Plaintiff suffered from irritability, anxiety, tearfulness, fatigue, and insomnia in relation to her depression, and prescribed Zoloft as treatment.  (*Id.*).  By July 25, 2008, Dr. Goodwin's notes show Plaintiff "doing well on Zoloft," sleeping better and feeling calmer.  (Tr. 200).  No further treatment for her depression is indicated by the medical records.

### 3. Anemia

Dr. Goodwin diagnosed Plaintiff with anemia on June 27, 2006, following a blood chemistry panel (performed in May of 2006) and Plaintiff's complaint of fatigue.  (Tr. 206).  He opined it was likely due to heavy menses, and prescribed an iron supplement to treat the condition.  (*Id.*).  Similar findings are reported in treatment notes dated May 12, 2009.  (Tr. 228).

### 4. Peripheral Edema

Plaintiff was diagnosed with peripheral edema on July 8, 2008, by Dr. Goodwin.  (Tr. 201).  Plaintiff reported the swelling was worse in the evenings and early mornings, but treatment notes also indicated she was "doing well" with "less edema" on July 25, 2008.  (Tr. 200).  Nothing further was reported in the medical evidence regarding this condition.

### 5. Degenerative Disc Disease

3

Plaintiff sought treatment from Dr. Goodwin on March 23, 2007, complaining of lower back pain.  (Tr. 202).  Treatment notes indicated a history of slipped discs, and that Plaintiff reported using heat wraps and taking over-the-counter pain medication.  (*Id.*).  She complained of morning stiffness with tingling and numbness in her legs and buttocks, and reported bending a lot each day.  (*Id.*).  Dr. Goodwin prescribed over-the-counter Tylenol for the pain, and ordered a lumbosacral spine X-ray.  (*Id.*).  The X-ray (dated March 26, 2007) results were unremarkable, demonstrating normal height of the vertebral bodies and disc interspaces, with no significant pathology in in the osseous structures, disc spaces, joints, or vertebral soft tissues.  (Tr. 211).

The record also shows Dr. Goodwin ordered another X-ray, performed September 11, 2008, for mid-back pain, which showed multilevel thoracic spondylosis, with mild multilevel degenerative disc disease, but no acute bony abnormalities.  (Tr. 208).  At this time, Plaintiff also complained of right shoulder pain, with tenderness in the paraspinal mid-thoracic region on her right side, and Dr. Goodwin noted 5/5 strength in her upper extremities, with decreased motion in her neck.  (Tr. 199).  Treatment notes show Plaintiff went to urgent care the previous week due to shoulder pain, and was prescribed Naproxen.  (*Id.*).  On September 23, 2008, treatment notes show Plaintiff's pain was "less severe," that Naproxen and Tramadol helped to relieve her pain, and that she had improved range of motion in her neck, but she continued to experience weakness and "falling asleep" of her right arm.  (Tr. 198).  Dr. Goodwin referred Plaintiff to physical therapy to treat her thoracic pain and degenerative disc disease.  (*Id.*).  By January 9, 2009, Dr. Goodwin's treatment notes report Plaintiff finished physical therapy and that her thoracic pain was improved; however, Plaintiff now complained of low back pain, and was diagnosed with lumbar strain.  (Tr. 197).

4

Plaintiff began physical therapy on referral from Dr. Goodwin on September 30, 2008, to treat her back pain.  (Tr. 186).  Her initial evaluation showed Plaintiff reported participating in activities including laundry, cleaning, cooking, working on her computer, and taking care of her granddaughter, but that she was restricted from pushing, pulling, or lifting heavy objects. (Tr. 185).  Plaintiff reported a pain range between 4/10, on her best days, to 10/10, on her worst. (*Id.*).  Therapy notes on October 2, 2008, show continued presence of pain, but at a lesser severity, and by October 6, 2008, Plaintiff "felt better."  (Tr. 188, 190).  On October 13 and 16, 2008, therapy notes show "no real pain," but with numbness and tingling.  (Tr. 192-193).  A final report was issued on November 13, 2008, stating that Plaintiff completed only seven physical therapy sessions, and had shown progressive improvement, but was discharged at that point for non-attendance.  (Tr. 195).

## B. Medical Opinion Evidence

### 1. Plaintiff's Treating Physicians

On January 29, 2009, Dr. Goodwin submitted a letter in reference to Plaintiff's disability application.  (Tr. 221).  In this letter, Dr. Goodwin reported that Plaintiff: has experienced lower back pain for over one year, and developed upper back pain "recently," in 2008; has a history of disc problems which causes her pain; and has extreme discomfort with prolonged standing, walking, and is unable to sit for prolonged periods of time.  (*Id.*).  In this letter, Dr. Goodwin further opined that "[d]ue to these restrictions, it is very difficult for [Plaintiff] to secure meaningful employment."  (*Id.*).

On January 21, 2010, Daniel Miller, M.D. completed a Multiple Impairment Questionnaire.  (Tr. 265-272).  According to this questionnaire, Dr. Miller started treating Plaintiff on November 12, 2009, and Plaintiff received physical therapy under his direction three

5

times per week. (Tr. 265).  On November 20, 2009, an initial physical therapy assessment showed back pain and tenderness, with numbness and tingling in her left thigh and some decreased lumbar range of motion.  (Tr. 257-258).  Plaintiff returned for therapy on November 24, 2009, but was a no show for scheduled appointments on December 1 and 2, 2009.  (Tr. 260-262).

The record does not show any additional treatment of Plaintiff by Dr. Miller; however, Dr. Miller offered an opinion as to Plaintiff's condition in the Multiple Impairment Questionnaire, dated January 21, 2010.  In the questionnaire, Dr. Miller reported a diagnosis of chronic lumbar back pain, with a fair to poor prognosis.  (Tr. 265).  In his findings, Dr. Miller reported Plaintiff has "severely diminished range of motion in her spine" and that she "experiences back pain with any activity."  (*Id.*).  In support of his opinion, Dr. Miller refers to an MRI of Plaintiff's lumbar spine showing disc bulging and degenerative disc disease; however, this imaging does not appear in the record.  (Tr. 266).

Included in the questionnaire opinion, Dr. Miller indicated Plaintiff is likely to be absent from work more than three times a month, and has the following limitations:  in an eight-hour workday, Plaintiff can sit, stand, and walk for no more than one hour; Plaintiff cannot sit continuously, and must move around at least every thirty minutes, but must sit back down within five minutes; Plaintiff cannot stand or walk continuously; can never lift or carry even zero to five pounds; has significant limitations in doing repetitive reaching, handling, fingering, or lifting; and cannot push, pull, kneel, bend, or stoop.  (Tr. 266-267, 270-271).  Additionally, Dr. Miller opined Plaintiff suffers from constant pain and fatigue severe enough to interfere with attention and concentration, and has marked limitation (or is essentially precluded from):  grasping, turning, or twisting objects; using fingers or hands for fine manipulations; and using her arms for

reaching.  (Tr. 268-269, 271).  The questionnaire also indicated Plaintiff's condition would get worse if placed in a competitive work environment, and that her condition interferes with her ability to hold her neck in a constant position.  (Tr. 269).  Dr. Miller expressed that Plaintiff's symptoms and limitations date back to September of 2006.  (Tr. 271).

On February 6, 2009, Plaintiff saw family doctor Mary Bovier, D.O., for a second opinion on her back pain.  (Tr. 229).  Medical records reflect that Dr. Bovier saw Plaintiff every three months during that year, and filled out a Multiple Impairment Questionnaire on January 13, 2011.  (Tr. 229, 294).  The questionnaire shows Dr. Bovier diagnosed Plaintiff with the following conditions:  degenerative disc disease; scoliosis; reflux; iron deficiency anemia; fatigue; hyperglycemia; chronic thyroiditis; hyperlipidemia; carpel tunnel syndrome in her right hand; and osteoarthritis.  (Tr. 294).  Treatment notes show Dr. Bovier's diagnoses, and report Plaintiff can walk more than thirty minutes, can climb two flights of stairs before needing to rest, can mop the floor but cannot wash walls, and cannot stand for more than twenty minutes without pain in her left hip and leg.  (Tr. 226).

In her questionnaire, Dr. Bovier expressed Plaintiff experiences pain "all day every day," that was made worse by physical therapy, and occurs when bending, walking, waking up, driving, sitting more than thirty minutes, walking more than two blocks, when taking stairs, or when standing more than fifteen minutes.  (Tr. 296, 298).  Dr. Bovier opined Plaintiff has the following limitations:  can only sit for one hour in an eight-hour work day; stand or walk for zero to one hour; cannot sit continuously and must get up every fifteen minute, for twenty to thirty minutes; can frequently lift up to five pounds, can occasionally lift up to ten pounds,[2] and can

---

[2] Despite opining that Plaintiff can occasionally lift five to ten pounds, further down the page in the questionnaire, Dr. Bovier stated Plaintiff can never lift more than five pounds due to her carpel tunnel syndrome.  (Tr. 297).

7

never lift over ten pounds; and can occasionally carry up to five pounds but can never carry over five pounds.  (Tr. 297).  Dr. Bovier further expressed Plaintiff suffers from frequent pain and fatigue severe enough to interfere with attention and concentration, and has marked limitation in: grasping, turning, and twisting objects; using her fingers and hands for fine manipulation; and reaching.  (Tr. 297-298).  The questionnaire also indicated Plaintiff would likely miss work more than three times per month, that her symptoms would increase if placed in a competitive work environment, and that her condition interferes with her ability to hold her neck in a constant position.  (Tr. 298-300).  Dr. Bovier opined that Plaintiff's symptoms and limitations date back to October of 2002.  (Tr. 300).  Dr. Bovier does not refer to any specific clinical findings in support of her opinion.  (Tr. 294).

## 2. State Agency Physicians

State agency physician Eli Perencevich, D.O., reviewed Plaintiff's medical records at the request of the agency.  (Tr. 256).  On September 16, 2009, Dr. Perencevich opined that, as to allegations of disability from April 1, 2006 through December 31, 2008, there was "insufficient evidence during this time frame to make a substantive determination regarding the [claimant's] physical functioning," and that additional information was needed.  (*Id.*).

Another state agency physician, Arthur Sagone, M.D., reviewed Plaintiff's medical records and opined, on February 18, 2010, that, during the relevant time period, Plaintiff was capable of:  occasionally lifting and/or carrying fifty pounds; frequently lifting and/or carrying twenty-five pounds; can stand and/or walk, and sit up to six hours in an eight hour workday, with no limitations in her ability to push and pull.  (Tr. 274).  In support, Dr. Sagone points to medical evidence, including X-rays performed in September 2008 showing only mild degenerative disc disease and multilevel thoracic spondylosis, and another performed in March 2007 that had

unremarkable results.  (Tr. 208, 277, 274).  He also comments that Plaintiff's statements are only partially credible, as her symptoms are disproportionate to her medically determinable impairments.  (Tr. 278).

A state agency psychologist, Joan Williams, Ph.D., also reviewed Plaintiff's medical records.  (Tr. 242-254).  Dr. Williams noted that medical records from St. Joseph Health Center indicated Plaintiff previously exhibited symptoms of depressed affect and tearfulness, but that insufficient evidence exists within the relevant time frame to make a substantive determination of Plaintiff's psychological functioning.  (Tr. 254).  On March 1, 2010, David Demuth, M.D. affirmed Dr. Williams assessment, stating that the only evidence relating to Plaintiff's alleged depression was treatment notes referring to depression, and comments that she was "doing well" on Zoloft.  (Tr. 281).   In affirming, Dr. Demuth stated this was insufficient to make a psychological functioning determination.  (*Id.*).

## III.  **ALJ's RULING**

The ALJ made the following relevant findings of fact and conclusions of law.  After determining Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2008, at Step One of the sequential analysis,[3] the ALJ determined Plaintiff did not

---

[3]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See 20 C.F.R. § 404.1520(a)*. The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

engage in substantial gainful activity during the period from her alleged onset date of April 1, 2006 through her date of last insured status.  (Tr. 14).  At Step Two, the ALJ found Plaintiff, on the date last insured, suffered from the following medically determinable impairments:  gastro-esophageal reflux disease, depression, peripheral edema, degenerative disc disease, and anemia, but that none of these impairments or combination of impairments significantly limited Plaintiff's ability to perform basic work-related activities for twelve consecutive months.  (*Id.*).  Thus, the ALJ found at this step that Plaintiff did not suffer from any severe impairment or combination of impairments, as described at 20 C.F.R. 404.1521 *et seq*.  (*Id.*).  Accordingly, the ALJ found that Plaintiff was not under disability, as defined in the Social Security Act, at any time from April 1, 2006, the alleged onset date, through December 31, 2008, the date of last insured.  (Tr. 19).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

---

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds:  (1) that the ALJ failed to properly weigh the medical evidence, and substantial evidence does not support the ALJ's finding that Plaintiff did not have a "severe" impairment; (2) the ALJ failed to properly evaluate

Plaintiff's credibility; and (3) the ALJ committed reversible error in failing to consider Plaintiff's obesity.  None of these objections are well taken.

### A. Substantial Evidence Supports the ALJ's Finding That Plaintiff Did Not Have A "Severe" Impairment

At step two of the sequential evaluation process, the claimant must prove he has an impairment which significantly interferes with his ability to work.  *See* 20 C.F.R. § 404.1520(c). While the claimant need not establish total disability at this stage, failure to demonstrate a severe impairment is critical because this step serves as a screening tool to allow adjudicators to dismiss groundless claims at an early stage in the evaluation process.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Given the importance of this step, courts have held that an impairment should only be deemed non-severe when the ailment is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with an individual's ability to work, irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing* *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).  However, even when an ALJ erroneously fails to deem one of a claimant's impairments as severe, such error will not necessarily be harmful to the claimant.  Remand is not required, if at the second step of the analysis, the ALJ finds the claimant to suffer from at least one severe impairment and continues to assess the claimant's severe and non-severe impairments during the remaining steps in the evaluation process.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The ALJ found that none of Plaintiff's impairments amounted to a "severe" impairment. (Tr. 14).  Plaintiff challenges this determination, arguing the ALJ improperly rejected the

opinions of Plaintiff's treating physicians, which, if analyzed correctly, would have led to a finding that Plaintiff had a "severe" impairment.

## 1. Treating Source Rule

It is well-recognized that an ALJ must give special attention to the findings of a claimant's treating sources.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(c)(2).[4]  The treating source doctrine indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

Even when a treating source's opinion is not entitled to controlling weight, the ALJ must still determine how much weight to give to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. § 404.1527(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating source's opinion.  *Id.* An ALJ's failure to adhere to this doctrine may necessitate remand.  *Wilson*, 378 F.3d at 545.

Contrary to Plaintiff's argument, the ALJ's assignment of weight to each of Plaintiff's treating physicians, Dr. Goodwin, Dr. Bovier, and Dr. Miller, is supported by substantial evidence.  The ALJ's analysis of each is discussed, in turn, below.

## a. Dr. Goodwin

[4]Effective March 26, 2012, sections 404.1527 and 416.927 of the Code of Federal Regulations were amended.  Paragraph (d) of each section was redesignated as paragraph (c).  *See* 77 F.R. 10651-01, 2011 WL 7404303.

The ALJ gives little weight to the opinion of Dr. Goodwin as to the functional limitations resulting from Plaintiff's impairments.  (Tr. 17).  The ALJ explains that Dr. Goodwin's opinion that Plaintiff cannot sit, stand, or walk for prolonged periods is not supported by objective medical evidence in the record, or even by Dr. Goodwin's own treatment records.  (*Id.*).  As such, the ALJ is not required to assign controlling weight to this opinion.  The ALJ clearly weighs the requisite factors, acknowledging the treatment relationship between Plaintiff and Dr. Goodwin, and that Dr. Goodwin reported within the bounds of his expertise, but finding full weight inappropriate because of the lack of medical evidence to support his opinion, even within his own treatment notes.  (*Id.*).  He thus provides good reasons for assigning little weight to Dr. Goodwin's opinion, and examination of the medical evidence supports this finding, as Dr. Goodwin's treatment notes and X-rays from the relevant time period are inconsistent with the extensive limitations expressed in his opinion. (Tr. 205, 207-208, 211).

The ALJ further assigned no weight to Dr. Goodwin's statement that Plaintiff would have difficulty maintaining employment due to her medical impairments.  Determination as to whether a claimant is "disabled" or "unable to work" is left to the Commissioner, and an ALJ is not required to accept medical source opinions on these issues.  20 C.F.R. § 404.1527(d).  As Dr. Goodwin's assessment falls under this reservation, it is thus not determinative and the ALJ is not required to give it weight.    Beyond this, the ALJ goes on to provide additional reasons, including that the opinion is "vague for want of definition," and undated, making it unclear whether it was issued for the relevant time period.  As such, the ALJ's assignment of weight is clearly explained and supported by substantial evidence.

b. <u>Dr. Bovier</u>

14

The ALJ also assigned little weight to the opinion of Dr. Bovier, as to Plaintiff's limitations in standing, sitting, walking, lifting and carrying, gross and fine manipulation, pushing, pulling, kneeling, bending, stooping, and requiring avoidance of exposure to certain environmental conditions.  (Tr. 18).  Finding the opinion unsupported by objective medical evidence, the ALJ was not required to give controlling weight to her opinion.  (*Id.*).  In assigning weight, the ALJ clearly explains his consideration of the requisite factors, giving consideration to Dr. Bovier's expertise and treatment relationship with Plaintiff, but finding no support for the opinion in either the objective or subjective medical evidence (including physical therapy reports showing Plaintiff "doing well," improving, and experiencing less pain, and X-ray results).  (Tr. 18, 190-193, 195, 207-208, 211).  The ALJ also explains the opinion is inconsistent with Plaintiff's purported daily activities during the period under consideration, which showed Plaintiff, as of September 2008, was capable of performing housework, including laundry, cleaning, and cooking, working on the computer, and taking care of her granddaughter.  (Tr. 18, 185).  Finally, the ALJ also points out that Dr. Bovier did not start treating Plaintiff until after the expiration of her date last insured.  (Tr. 18).

Plaintiff argues the ALJ erred in considering the timing of Dr. Bovier's treatment of Plaintiff in assigning little weight to her opinion.  In her brief, Plaintiff points to a Michigan District Court opinion, as well as opinions from other Circuits, ruling that retrospective opinions must be considered.[5]  However, this argument does not have merit here, as the ALJ clearly

---

[5] *See* Toscano v. Comm'r of Soc. Sec., No. 08-15140, 2009 WL 5217657, *4 (E.D. Mich., Dec. 30, 2009), *see also* Wilkins v. Sec. of Health & Human Svs., 953 F.2d 93, 96 (4th Cir. 1991) (asserting Administration must consider retrospective opinions); Likes v. Callahan, 112 F.3d 189, 190-191 (5th Cir. 1997) (holding ALJ erred in rejecting mental health professionals' retrospective opinions); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998) (finding retrospective opinions must be considered when consistent with the record); Rivera v. Sullivan, 923 F.2d 964, 969 (2d Cir. 1991) (finding retrospective opinion of treating physician binding on the Commissioner unless contradicted by other medical evidence or

considered the opinion of Dr. Bovier, and assigned weight based on a multitude of factors.  (Tr. 18).  The ALJ did not reject the opinion of Dr. Bovier outright because of its retrospective nature, but considered this as one factor in determining the appropriate weight to afford the opinion.  (*Id.*).

### c. Dr. Miller

The ALJ also assigned little weight to the opinion of Dr. Miller, as to Plaintiff's limitations in sitting, standing, walking, lifting, carrying, manipulation, pushing, pulling, kneeling, bending, and stooping.  (Tr. 18).  Finding the opinion unsupported by objective medical evidence, the ALJ was not required to give controlling weight to his opinion.  (*Id.*).  In assigning weight, the ALJ clearly explains his consideration of the requisite factors, giving consideration to Dr. Miller's expertise and treatment relationship with Plaintiff, but finding no support for the opinion in either the objective or subjective medical evidence (including physical therapy reports showing Plaintiff "doing well," improving, and experiencing less pain, and X-ray results[6]).  (Tr. 18, 190-193, 195, 207-208, 211).  The ALJ also explains the opinion is inconsistent with the Plaintiff's purported daily activities during the period under consideration, which showed Plaintiff, as of September 2008, was capable of performing housework, including laundry, cleaning, and cooking, working on the computer, and taking care of her granddaughter.

---

"overwhelmingly compelling" non-medical evidence in the absence of competing medical opinions); *Flaten v. Sec. of Health & Human Svs.*, 44 F.3d 1453, 1461 (9th Cir. 1995) (finding claimant entitled to disability based on retrospective opinion where can demonstrate disability existed prior to expiration of insured status).

[6] In support of his opinion, Dr. Miller does point to an MRI that allegedly shows disc bulging and degenerative disc disease, but Dr. Miller provides no date for this image, nor is it attached to the questionnaire for review.  The image does not appear anywhere in the record.  (Tr. 266).

(Tr. 18, 185). Finally, the ALJ also points out that Dr. Miller did not start treating Plaintiff until after the expiration of her date last insured.[7]  (Tr.  18).

## 2. The ALJ Appropriately Considered the Opinion of Dr. Eli Perencevich

Plaintiff also makes a meritless objection to the ALJ's consideration of the opinion of state agency physician Dr. Eli Perencevich, who determined the record showed insufficient evidence to make a substantive determination in Plaintiff's physical functioning.[8]  (Tr. 17, 256). In making determinations, medical opinions from both treating and non-examining physicians in the case record are appropriately considered together with the rest of the evidence, and the ALJ is given the authority to weigh that evidence as he deems appropriate.  20 C.F.R. 404.1527(b)-(c)(e), SSR 96-6p (stating state agency medical and psychological consultants are highly qualified, and are experts in evaluation of medical issues in disability claims, whose opinions may be entitled to greater weight than opinions of treating sources in appropriate circumstances). Additionally, Plaintiff bears the burden of proof to show she is entitled to disability benefits, and is responsible for providing such evidence with her application.  20 C.F.R. § 404.1512(c).  Dr. Perencevich's determination that sufficient evidence was not provided to determine the extent of any possible limitations caused by her impairments does not require the ALJ to reject that opinion.  Rather, the ALJ appropriately weighed this opinion, along with the other evidence of record, in reaching his conclusion.  (Tr. 15-19).

## 3. The ALJ's Determination at Step Two Is Supported By Substantial Evidence

[7] Plaintiff's challenge to the ALJ's consideration of the retroactive nature of Dr. Miller's opinion has no merit for the same reasons outlined in the immediately preceding paragraph, explaining the lack of merit of this challenge to Dr. Bovier's opinion.

[8] The ALJ also considers the opinion of state agency psychological consultant Joan Williams, Ph. D., who determined there was insufficient evidence to make a substantive determination about Plaintiff's psychological functioning.  (Tr. 17).  However, although nearly identical to the ALJ's consideration of Dr. Percenevich's findings, to this Plaintiff raises no objection.

In sum, the ALJ's determination that Plaintiff's impairments are not severe is supported by substantial evidence.    When evaluating whether an impairment or combination of impairments is severe, an ALJ must determine whether the impairment in question significantly limits the ability to perform basic work-related activities for twelve consecutive months.  20 C.F.R. § 404.1521.  (Tr. 14).  In addition to appropriately weighing the opinions of Plaintiff's treating physicians, the ALJ continues her analysis of all the evidence on the record under this standard, including the opinions of state agency physicians, Plaintiff's daily activities, and Plaintiff's subjective complaints as to the limitations and pain caused by her conditions (which the ALJ discredits, as discussed in Subsection B of this opinion, below).  (Tr. 14-19).  Each condition and the corresponding lack of limitations associated with the condition, is referenced by the ALJ, supported by medical records including treatment notes, X-ray and MRI results, other test results, and physical therapy notes.  (*Id.*).  As the ALJ considers the conditions individually and in combination, and provides sufficient explanation and evidentiary support for his determination, his finding that Plaintiff did not suffer from any severe impairment during the relevant time period is supported by substantial evidence.

**B. Substantial Evidence Supports the ALJ's Determination as to Plaintiff's Credibility Regarding Her Subjective Complaints**

This circuit follows a two-part test in evaluating a claimant's subjective allegations regarding disabling symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994).  First, the ALJ must determine whether there is objective medical evidence showing the existence of an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c).  Second, if the ALJ finds that an underlying impairment exists, then the ALJ must

evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work.  20 C.F.R. §§ 404.1529(c), 416.929(c).  In evaluating the claimant's symptoms, the ALJ should consider the individual's daily activities, the location, duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Felisky,* 35 F.3d at 1039-40.

Because the ALJ has the opportunity to observe the claimant's demeanor during the hearing process, he is best equipped to evaluate the witness' credibility.  *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247-48 (6th Cir. 2007).  Yet, the ALJ is not permitted to make credibility determinations based upon "intangible or intuitive notion[s]" about the individual.  *Id.*  Instead, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In determining that Plaintiff's impairments did not amount to the requisite level of severity to proceed past Step Two, the ALJ considered the subjective allegations of Plaintiff, (along with the medical evidence of record and the opinion evidence offered by both Plaintiff's treating physicians and the state agency physicians), and found her to be not credible as to the intensity, persistence, and limiting effects of her impairments.  (Tr. 15, 18).  Applying the appropriate two-step test, the ALJ first found that Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms.  (Tr. 15).  However, at

the second step, the ALJ rejected Plaintiff's allegations of severe pain in her back, shoulders, and hands, and severe fatigue resulting in sleep patterns of ten to fourteen hours per day, as not credible so far as it is inconsistent with her finding that Plaintiff has no severe impairment.  In making this determination, the ALJ compared these claims to the entire case record, including the objective and subjective medical evidence as to each medically determinable impairment, and Plaintiff's activities of daily living.  (Tr. 15-19).  The ALJ determined that the medical evidence does not support the extreme limiting nature of symptoms as expressed by Plaintiff. (*Id.*).  Additionally, the ALJ found Plaintiff's reported daily activities, including housework and taking care of her granddaughter, during the relevant time period to be inconsistent with her alleged symptoms.  (Tr. 15-19, 185).  Bolstering her findings, the ALJ specifically points to the medication and positive progress noted in the treatment records for each condition, and expresses that the record generally does not contain any indication of limitations caused by Plaintiff's conditions.  (Tr. 15-17).

Plaintiff incorrectly argues the ALJ provides no explanation for his credibility determination, and that he renders his credibility decision *after* finding Plaintiff's impairments not severe.  There is no basis for this argument.  As discussed above, the ALJ provides detailed reasons for finding Plaintiff's subjective complaints not credible, including inconsistency with objective and subjective medical evidence, and her reported daily activities.  (Tr. 15-19).  In his opinion, the ALJ clearly states he finds Plaintiff's statements not credible "for the reasons explained below," immediately before explaining his detailed analysis.  (Tr. 15).  Merely choosing to organize his written decision in a coherent manner by introducing his analysis with his overall determination does not support Plaintiff's argument that the ALJ's analysis was defective.  What's more, concluding the analysis, the ALJ sums up that his finding of no severe

impairment was based on consideration of the totality of the evidence, including "due consideration given to the subjective allegations of the claimant," indicating the credibility finding was determined before his final conclusion at Step Two. (Tr. 18).

### C. The ALJ Was Not Required to Consider Obesity In His Evaluation of Plaintiff's Impairments

Plaintiff's argument that the ALJ committed reversible error in failing to consider Plaintiff's alleged obesity is not well taken. First, although the burden is on Plaintiff to prove her entitlement to benefits, she does not raise obesity as a cause of her disability in her initial application for benefits, nor does she indicate she sought treatment from her primary care physician for obesity-related concerns. 20 C.F.R. § 404.1512(a). (Tr. 136, 140-141). Second, the ALJ indicated he reviewed all of the evidence prior to reaching a decision, and there is no requirement that an ALJ mention every piece of evidence in the record in order to demonstrate that such was considered. *See Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005); *Roselieb v. Astrue*, No. 09-226, 2010 WL 1959446, at *2 (E.D.Ky. May 17, 2010). Although Plaintiff's height and weight is mentioned in several of her medical records, only once is "obesity" mentioned in Plaintiff's treatment notes, and only in reference to Plaintiff's indication that she would like to see a dietician. (Tr. 204). What's more, none of Plaintiff's physicians indicate any functional limitation stemming from her weight. As such, failure on the part of the ALJ to discuss a condition mentioned once in the entire medical record, and not even previously alleged by Plaintiff as a condition contributing to her disability, is not reversible error.

### VII. DECISION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**, as it is supported by substantial evidence.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  May 29, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See* *Thomas v. Arn*, 474 U.S. 140 (1985); *see also* *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).